UNITED STATES of America,
Plaintiff–Appellee,

v.

Jorge MEDINA–RAMOS,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos MEDINA–ALVAREZ,
Defendant–Appellant.

Nos. 86–2467, 86–2468.

United States Court of Appeals,
Tenth Circuit.

Dec. 4, 1987.

Serapio L. Jaramillo, Albuquerque, N.M., for defendant-appellant Medina–Ramos.

Paul J. Kennedy, Albuquerque, N.M., for defendant-appellant Medina–Alvarez.

Presiliano Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Jennifer A. Salisbury, Asst. U.S. Atty., on the briefs), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN, BARRETT, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Carlos Medina–Alvarez and Jorge Medina–Ramos were each convicted in New Mexico of one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1982). Defendants contend that the trial court erred in overruling their objections to venue. Because we agree with defendants that venue was not proper in New Mexico, we do not consider the other arguments raised on appeal.

The facts relevant to our resolution of the venue issue are undisputed. Defendants were traveling by train from Los Angeles, California, to Chicago, Illinois. While the train was still in California, train officials determined that defendants were illegal aliens. They were taken off the train in Needles, California, arrested by the Needles police, and then taken to Blythe, California, to be processed for possible deportation. The train thereafter traveled on into Arizona, where a train official found a suitcase in the rack above the seats in which defendants had been sitting. The official remembered Medina–Alvarez carrying the case onto the train. He gave the suitcase to another train agent when the train stopped in New Mexico so it could be placed on a west-bound train and returned to Medina–Alvarez. When the agent in New Mexico opened the case to look for some identification, he found a kilo of cocaine in a box inside a plastic shoe bag.

Defendants had never been in New Mexico until they were brought there to face the charges underlying their convictions. They contend that the physical presence in New Mexico of the cocaine alone was not sufficient under the circumstances of this case to establish venue. The Government argues that venue in New Mexico was proper under the doctrine of constructive possession.

The Constitution contains two overlapping provisions on venue in criminal cases. Article III, § 2, cl. 3 requires that the trial of any crime be held in the state in which the crime was committed, while the Sixth Amendment requires that trial be by a jury of the state and district in which the

crime was committed. These directives are the product of the Framers' concern over "the unfairness and hardship to which trial in an environment alien to the accused exposes him." *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944). The Supreme Court has pointed out that an expansive interpretation of venue can impose "needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense" and can also lead "to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution." *Id.* Determining venue thus raises

> "matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law.... Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed."

*Id.* 323 U.S. at 276, 65 S.Ct. at 250; *see also United States v. Jackson,* 482 F.2d 1167, 1178 (10th Cir.1973), *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974).

■ In keeping with the constitutional provisions discussed above, Fed.R.Crim.P. 18 states that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." The statute at issue here, 21 U.S.C. § 841(a)(1), does not contain a specific venue provision. When the statute does not specify venue, the place at which the crime was committed "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946); *see also United States v. Mendel,* 746 F.2d 155, 164 (2d Cir.1984), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *United States v. Billups,* 692 F.2d 320, 332 (4th Cir.1982), *cert. denied,* 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983); *Jackson,* 482 F.2d at 1178. In making this determination, courts usually examine the verbs employed in the statute to define the offense. *See Mendel,* 746 F.2d at 164; *Billups,* 692 F.2d at 332.

■ Defendants were charged with violating that part of section 841(a)(1) which states that it is unlawful to knowingly possess with intent to distribute a controlled substance. The key verb is "possess," and the acts that define the crime are the acts by which a defendant possesses the drug. The location at which the acts constituting possession occur is therefore the location at which the crime is committed for purposes of venue.

Although defendants never physically possessed the cocaine in New Mexico, the Government asserts that the crime nonetheless took place there under the doctrine of constructive possession. It contends that even though defendants were removed from the train in California, they could have demanded the return of the suitcase and its contents at any time while the train was en route to Chicago, the intended destination of the defendants and their baggage.

■ "Constructive possession is possession in law but not in fact. A person in constructive possession of an item knowingly holds the power and ability to exercise dominion and control over it.... 'In essence, constructive possession is the ability to reduce an object to actual possession.'" *United States v. Massey,* 687 F.2d 1348, 1354 (10th Cir.1982) (quoting *United States v. Martinez,* 588 F.2d 495, 498 (5th Cir.1979)). Knowingly holding the ability to control an object, and the acts by which that ability is manifested and implemented, are thus the means by which a crime is committed through constructive possession.

The typical constructive possession case in the criminal law is where the defendant and the object are in the same jurisdiction, but defendant does not have the object in hand and indeed may try to disclaim ownership or possession. Because he has the power or means to reduce the object to actual possession, by reason of holding a baggage claim or other identification con-

necting him to the object, we do not permit a disclaimer, and we rule that he possesses the object.

We have found no case in which the defendant was prosecuted in a state where the object was found but to which neither the defendant nor a confederate had ever traveled. In our view, the acts and ability giving rise to constructive possession can only take place where the possessor is physically present, because he must exercise some act of dominion or authorize an act of dominion before the object may be reduced to his actual possession. It follows that the locus of the constructive possession, and hence the locus of a crime committed by constructive possession, cannot be a place where the defendant has never been, personally or by a person whose acts are attributable to him. Assuming that defendants in this case constructively possessed the cocaine, they did so in California where they held the ability to control and where any acts establishing this ability to control would have had to occur.[1]

The Government's cited cases are not to the contrary. In *United States v. Williams*, 503 F.2d 50 (6th Cir.1974), the court concluded only that the defendant in Cleveland had constructive possession of a suitcase lost in Chicago until airline personnel there turned the case over to a customs agent upon discovering illegal drugs. Venue was not an issue in the case and, significantly, the defendant was tried in *Cleveland*, not in Chicago. Similarly in *United States v. Blackston*, 547 F.Supp. 1200 (S.D. Ga.1982), *aff'd in part and vacated in part on other grounds sub nom. United States v. Brantley*, 733 F.2d 1429 (11th Cir.1984), *cert. denied*, 470 U.S. 1006, 105

S.Ct. 1362, 84 L.Ed.2d 383 (1985), venue was determined by reference to the location of the *defendants* and not by reference to the location of the drug. The defendants argued that venue in Georgia was improper because the drugs were located in South Carolina and were never proved to have been in Georgia where the defendants were. Contrary to the Government's argument here, the court in *Blackston* specifically stated that the offense of possession "may be tried in any district where the *defendants* were even temporarily located, as long as the Government proves, by a preponderance of the evidence, that *the defendants had knowing possession* of the narcotics and the intent to distribute them while there." *Id.* 547 F.Supp. at 1206 (emphasis in original).

We likewise find no support for the Government's position in *United States v. Barnard*, 490 F.2d 907 (9th Cir.1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). In that case several defendants were charged with conspiracy to import, importation, and possession with intent to distribute arising from two plane trips to bring marijuana from Mexico into the Central District of California. The court upheld venue for the possession charge in the Southern District of California because the plane, loaded with marijuana, flew over the Southern District on its way to the Central District. However, at least one of the defendants was in the plane when it flew over the Southern District, and, in view of the facts of the case and the conspiracy alleged, any defendants who were not actually in the plane were aiding and abetting those who were.

One who has never been physically present in a district may nonetheless be

---

1. The Government contends that possession with intent to distribute is a continuing offense and therefore governed by the venue provision in 18 U.S.C. § 3237(a) (Supp. III 1985), which provides in relevant part as follows:

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

Even if we were to conclude that possession is a continuing offense within the ambit of the above statute, the possession must nonetheless continue in the district in which the Government seeks to prosecute. As set forth in the text, constructive possession in this case could not continue into New Mexico because the acts constituting constructive possession could not have been done there.

prosecuted there for possession if he aids and abets a principal who has either actually or constructively possessed a controlled substance in the jurisdiction. *See, e.g., Brantley,* 733 F.2d at 1434; *United States v. Buckhanon,* 505 F.2d 1079, 1082–83 (8th Cir.1974). Although defendants in the present case were charged with aiding and abetting, there is no evidence showing that they aided and abetted anyone who actually or constructively possessed the cocaine in New Mexico with the intent to distribute it.[2]

In sum, we conclude that, under the circumstances of this case, venue was not proper in New Mexico because defendants did not constructively possess the cocaine there. Accordingly, the conviction is reversed.

The mandate will issue in fourteen days from the date of this opinion. Because defendants are incarcerated, any petition for rehearing must be filed within fourteen days from the date of this opinion and no extensions of time will be granted.

BARRETT, Circuit Judge, dissenting:

I respectfully dissent. In my view, the government correctly contended and the trial court did not err in agreeing that venue was properly laid in New Mexico under the doctrine of constructive possession.

The defendants boarded the train together in California, each carrying a suitcase. They boarded on a *joint* ticket destined to Chicago. The defendants thus intended to travel into New Mexico en route to Chicago. When the defendants were removed from the train at Needles, California, they had the ability to control the suitcase left on the train by simply requesting of the railroad officials that the suitcase be removed and returned to them.

The defendants argued in the trial court that they had abandoned the suitcase after they were removed from the train at Needles and after being asked whether they did not have another suitcase on the train. The trial court ruled, as a matter of law, that no abandonment had occurred. While I am troubled by that ruling, I nevertheless accept it for purposes of the constructive possession analysis.

The defendants, not having abandoned the suitcase after their removal from the train at Needles, had the means to reduce the suitcase to their possession even when the train traveled into New Mexico without them on board. The defendants had the power to identify the suitcase and its contents and to request its return, and this power existed until the suitcase was delivered to government agents by the train agent in New Mexico who observed the kilo of cocaine inside a plastic shoe bag in the suitcase while attempting to verify ownership of the suitcase.

If a defendant should mail a package containing cocaine to a post office box in another state under his control, certainly he would not prevail on an argument that he lacked constructive possession of the package en route and when it reached its destination, even though the defendant did not travel. Further, if a baggage claim is sufficient to connect a defendant with contraband within a state, why should it not be so between states? We have painted with a brush too broad by declaring that "It follows that the locus of the constructive possession, cannot be a place where the defendant has never been, personally or by

2. We are not concerned in this case with a charge of distributing or importing a controlled substance. Because the acts by which the crime of distribution is committed may be different from the acts establishing possession, venue for that crime does not rest on the same factors that establish venue for a possession prosecution. *See, e.g., United States v. Brunty,* 701 F.2d 1375, 1380–82 (11th Cir.) (distribution may include acts other than possession if perpetrated in furtherance of transaction as a whole), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983). Venue for importation crimes is set by statute as "any district from, through, or into which such ... imported object ... moves." 18 U.S.C. § 3237(a); *see, e.g., United States v. Gray,* 626 F.2d 494, 497–98 (5th Cir.) (importation not complete until drug reaches final destination; venue proper in any district along the way), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980); *Jackson,* 482 F.2d at 1178.