March 30, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-1890

 UNITED STATES,

 Appellee,

 v.

 PETER N. GEORGACARAKOS,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Morton A. Brody, U.S. District Judge]
 

 

 Before

 Selya, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Cyr, Circuit Judge.
 

 

 Seth M. Kalberg, Jr. for appellant.
 
 Margaret D. McGaughey, Assistant United States Attorney,
 
with whom Richard S. Cohen, United States Attorney and Jonathan
 
Chapman, Assistant United States Attorney were on brief, for
 
appellee.

 

 March 30, 1993
 

 BOWNES, Senior Circuit Judge. The defendant, Peter
 BOWNES, Senior Circuit Judge
 

N. Georgacarakos, appeals his conviction of possession with

intent to distribute and distribution of cocaine on the

grounds that the district court's jury instructions on venue

were erroneous, and that his defense was flawed by the

ineffective assistance of counsel. We decline to consider

the defendant's ineffective assistance claim which was not

raised before the district court. The jury instructions on

venue, to which defendant-appellant now objects, were not

objected to after the charge as required by Fed. R. Crim. P.

30. We find that the instructions did not constitute plain

error and affirm the conviction.

 I.

 BACKGROUND
 

 During October, 1991, Frank "Tony" Porcaro agreed

to cooperate with the Drug Enforcement Administration ("DEA")

office and the South Portland Police Department in Maine on

supervised undercover drug purchases from drug dealers. In

his role as an undercover informant, Porcaro contacted the

defendant, whom he had known for several months, and asked

the defendant to help him purchase cocaine. Porcaro told the

defendant that he owed money to dangerous people, that he had

resorted to desperate methods to get money for repayment, and

that he had to get cocaine in order to pay them back. After

 -2-
 2

several calls from Porcaro, the defendant agreed to help him

buy cocaine. The DEA and South Portland police instructed

and supervised Porcaro in the undercover operation, and

provided Porcaro with all necessary equipment including

substantial amounts of money for the cocaine purchases and a

"body wire" recording device to record his conversations with

the defendant. 

 The defendant and Porcaro made two trips to

Lawrence, Massachusetts, one on October 25 and the other on

November 15, 1991, to purchase cocaine. On both days, the

defendant called his source in Lawrence before he and Porcaro

began their journey. Porcaro drove borrowed cars on both

trips and the defendant was the only passenger. The

defendant admits that he purchased cocaine with Porcaro's

money and then gave the cocaine to him. He testified at

trial and argues on appeal that he purchased and gave the

cocaine to Porcaro in Massachusetts. Porcaro testified to

the contrary that on both occasions the defendant kept the

cocaine until they reached their destinations in Maine.

Porcaro testified that on October 25, the defendant kept the

cocaine in his pants until they reached Scarborough where he

handed Porcaro the cocaine wrapped in a napkin. As to the

November 15 trip, Porcaro testified that the defendant again

kept the cocaine during the trip back to Maine and that he

never saw the cocaine. Porcaro testified that he drove to a

 -3-
 3

prearranged meeting place, a motel parking lot in South

Portland. In the parking lot, Porcaro got out of the car,

and police and DEA agents surrounded the car. Two of the

agents testified that they saw the defendant moving and

leaning forward toward the dashboard before he put his hands

up as ordered. The agents found a package of cocaine in the

glove compartment of the car after the defendant was

arrested. 

 Venue was the primary focus of the defense.

Defense counsel objected to the district court's proposed

jury instructions on venue before counsels' closing arguments

to the jury and before the court gave the charge to the jury.

When the court gave counsel an opportunity to object to the

instructions after the charge and before the jury retired,

defense counsel raised other issues, but did not object again

to the instructions on venue. The jury found that venue was

proper in Maine, and found the defendant guilty on both

counts. This appeal followed.

 II.

 ANALYSIS
 

 The defendant raises two issues on appeal: (1)

error in the district court's jury instructions on venue, and

(2) ineffective assistance of counsel due to trial counsel's

failure to pursue the defense of entrapment. 

 -4-
 4

A. Jury Instructions on Venue
 

 During the charge to the jury, the district court

gave instructions on venue which the defendant claims are

contrary to the law because they allowed the jury to take an

impermissibly broad view of conduct relevant to proving

venue. Proper venue in a criminal prosecution is a

constitutional right: 

 the Framers wrote into the Constitution
 that "The Trial of all Crimes . . . shall
 be held in the State where the said
 Crimes shall have been committed. . ."
 Article III, 2, cl. 3. As though to
 underscore the importance of this
 safeguard, it was reinforced by the
 provision of the Bill of Rights requiring
 trial "by an impartial jury of the State
 and district wherein the crime shall have
 been committed." Sixth Amendment. 

United States v. Johnson, 323 U.S. 273, 275 (1944); see also
 

Fed. R. Crim. P. 18. If the federal statute defining the

crime charged does not indicate a method for determining the

location of the crime for venue, the location "must be

determined from the nature of the crime alleged and the

location of the act or acts constituting it." United States
 

v. Anderson, 328 U.S. 699, 703 (1946). Because venue is not
 

an element of the offense, the government bears the burden of

proving venue by a preponderance of the evidence rather than

by the higher standard, beyond a reasonable doubt. United
 

States v. Hall, 691 F.2d 48, 50 (1st Cir. 1982). 
 

 -5-
 5

 The defendant in this case was charged in two

counts with violation of 21 U.S.C. 841(a)(1) and 

841(b)(1)(C): Count One charged possession with intent to

distribute and distribution of cocaine on October 25, 1991,

and Count Two charged possession with intent to distribute on

November 15, 1991. The statute does not indicate a method

for determining venue. Continuing crimes, i.e., crimes

committed in more than one district, are governed by 18

U.S.C. 3237(a).1 Distribution and possession with intent

to distribute drugs are continuing crimes. United States v.
 

Uribe, 890 F.2d 554, 558-59 (1st Cir. 1989); United States v.
 

Kiser, 948 F.2d 418, 425 (8th Cir. 1991), cert. denied, 112
 

S. Ct. 1666 (1992). Therefore, venue for the crimes

prosecuted in this case was proper in any district where the

crimes began, continued or were completed. 

 In order to decide where the crimes occurred, we

must determine what acts by the defendant constituted the

crimes charged. Johnston v. United States, 351 U.S. 215,
 

220-21 (1956). To determine venue, we examine "the key verbs

 

1 18 U.S.C. 3237(a) provides in pertinent part:

 (a) Except as otherwise expressly
 provided by enactment of Congress, any
 offense against the United States begun
 in one district and completed in another,
 or committed in more than one district,
 may be inquired of and prosecuted in any
 district in which such offense was begun,
 continued, or completed.

 -6-
 6

in the statute defining the criminal offense" to find the

scope of relevant conduct. United States v. Tedesco, 635
 

F.2d 902, 905 (1st Cir. 1980), cert. denied, 452 U.S. 962
 

(1981); see also United States v. Griffin, 814 F.2d 806, 810
 

(1st Cir. 1987). The key verbs relevant to the crimes

charged in this case are "distribute" and "possess with

intent to distribute." Actions which are merely preparatory

or prior to the crime are not probative in determining venue.

United States v. Beech-nut Nutrition Corp., 871 F.2d 1181,
 

1190 (2d Cir.), cert. denied sub nom., Lavery v. United
 

States, 493 U.S. 933 (1989). Therefore, only actions by the
 

defendant which constitute either distributing or possessing

with intent to distribute cocaine are probative in

determining venue for those offenses. Griffin, 814 F.2d at
 

810; United States v. Davis, 666 F.2d 195, 200 (5th Cir. Unit
 

B 1982). Jury instructions on venue must restrict the

jury's focus to the defendant's conduct which constituted the

crimes charged.

 The jury instructions which the defendant

challenges were as follows:

 Now both counts charge that the crimes
 occurred in the district of Maine and
 elsewhere. It is sufficient if the
 government proves by a preponderance of
 the evidence, in other words, that it is
 more likely than not, that any act in
 
 furtherance of the crimes charged
 
 occurred in Maine. Offenses beginning in
 
 one district and completed in another or

 -7-
 7

 committed in more than one district may
 be prosecuted in either such district.
 . . .
 Let me summarize this for you. If you
 are convinced beyond a reasonable doubt
 that the defendant distributed cocaine
 and possessed cocaine with the intent to
 distribute it, on a date reasonably near
 October 25, 1991, and you are convinced
 that it is more likely than not that the
 defendant did any act in Maine in
 
 furtherance of this crime, then you must
 
 convict him on Count One. Otherwise, you
 must acquit him on Count One.
 If [you] are convinced beyond a
 reasonable doubt that the defendant
 possessed cocaine with the intent to
 distribute it on a date reasonably near
 November 15, 1991, and you are convinced
 that it is more likely than not that the
 defendant did any act in Maine in
 
 furtherance of this crime, then you must
 
 convict him on Count Two. Otherwise, you
 must acquit him on Count Two.

Record at 461, 464 (emphasis added). The emphasized

language, which is challenged by the defendant, appropriately

describes venue for a conspiracy charge or for aiding and

abetting others in commission of a crime. Uribe, 890 F.2d at
 

558; see also United States v. Lam Kwong-Wah, 924 F.2d 298,
 

301 (D.C. Cir. 1991) ("It is a well-established rule that 'a

conspiracy prosecution may be brought in any district in

which some overt act in furtherance of the conspiracy was

committed by any of the co-conspirators,'" (citation

omitted)); United States v. Long, 866 F.2d 402, 407 (11th
 

Cir. 1989) (discussing similarity of proof necessary to

establish venue for conspiracy and aiding and abetting).

Group crimes, such as conspiracy and aiding and abetting, may

 -8-
 8

have a broad scope of conduct relevant to venue due to

multiple participants and the participatory nature of the

crimes. In individual crimes, such as distribution and

possession with the intent to distribute cocaine, "actions in

furtherance of the crime" could be interpreted by a jury to

include conduct other than possessing and distributing

cocaine which is merely preparatory or prior to the crimes.

We agree with the defendant, therefore, that the district

court's instructions on venue were overly broad and were

erroneous. 

 Because the defendant failed to object to the

instructions on venue after the charge to the jury as

required by Fed. R. Crim. P. 30, we review the instructions

under the plain error standard.2 United States v. Arias-
 

Santana, 964 F.2d 1262, 1268 (1st Cir. 1992); United States
 

v. Mendoza-Acevedo, 950 F.2d 1, 4-5 (1st Cir. 1991). "Plain
 

errors or defects affecting substantial rights may be noticed

although they were not brought to the attention of the

 

2 Fed. R. Crim. P. 30 provides in pertinent part:

 No party may assign as error any portion
 of the charge or omission therefrom
 unless that party objects thereto before
 the jury retires to consider its verdict,
 stating distinctly the matter to which
 that party objects and the grounds of the
 objection. Opportunity shall be given to
 make the objection out of the hearing of
 the jury and, on request of any party,
 out of the presence of the jury.

 -9-
 9

court." Fed. R. Crim. P. 52(b). To cause reversal of

conviction, plain error must be so egregious as to "undermine

the fundamental fairness of the trial and contribute to a

miscarriage of justice." United States v. Young, 470 U.S. 1,
 

16 (1985). When reviewing jury instructions for plain error,

we examine the instructions in the context of the entire

charge, and as part of the record of the trial, to determine

whether they undermined the fundamental fairness of the

trial. Id. at 15-16; United States v. Park, 421 U.S. 658,
 

674 (1974) (challenged jury instructions are to be "viewed as

a whole and in the context of the trial"); United States v.
 

Weston, 960 F.2d 212, 216 (1st Cir. 1992) ("In assessing
 

claims of plain error, we consider the instructions as a

whole, taking into account whether the putative errors so

skewed the entire trial that the defendant's conviction

offends due process."). The question is whether the

erroneous instructions allowed the jury to find venue in

Maine in violation of the defendant's constitutional right to

venue in the district where the crimes were committed.

 The defendant urges us to reverse his conviction

based upon the rule "'that when a case is submitted to the

jury on alternative theories the unconstitutionality of any

of the theories requires that the conviction be set aside.'"

United States v. Rodriguez, 465 F.2d 5, 10 (2d Cir. 1972)
 

(quoting Leary v. United States, 395 U.S. 6, 31-32 (1969))
 

 -10-
 10

(footnotes omitted). In Leary, id., the defendant challenged
 

the constitutionality of a statutory presumption which was

the basis for one of two alternative theories of guilt

presented to the jury. The Supreme Court held that the

statutory presumption was unconstitutional and reversed the

conviction. In Rodriguez, 465 F.2d 5, the issue of venue of
 

the crime of uttering a forged check was submitted to the

jury on two alternative theories of guilt: aiding and

abetting the crime or that the crime of uttering a forged

check was a "continuing offense" pursuant to 18 U.S.C. 

3237. The court held that because the crime of uttering a

forged check was not a continuing offense, one of the

theories was incorrect, and reversed the conviction based on

the Leary rule.
 

 In this case, the jury instructions did not present

two alternative theories of guilt. Rather, the instructions

impermissibly broadened the scope of conduct which the jury

might have considered in determining venue. The Leary rule,
 

therefore, is inapposite to this case. An analogous rule,

which is more closely related to this case, provides "that a

general verdict must be set aside if the jury was instructed

that it could rely on any of two or more independent grounds,

and one of those grounds is insufficient, because the verdict

may have rested exclusively on the insufficient ground."

Zant v. Stephens, 462 U.S. 862, 881 (1983). An exception to
 

 -11-
 11

the rule exists if uncertainty as to the grounds for the

jury's verdict can be eliminated. United States v. Ochs, 842
 

F.2d 515, 520 (1st Cir. 1988). Based on a review of the

trial record, there can be no uncertainty that the jury's

verdict on venue was based on sufficient grounds. 

 There were two versions of events of the trips

presented to the jury through testimony at trial. Porcaro,

the informant, testified that during both trips to

Massachusetts, the defendant kept the package of cocaine with

him until they arrived back in Maine. Based on Porcaro's

testimony, there is no question that the jury could

sustainably have found that the defendant possessed and

distributed the cocaine in Maine during the October 25 trip,

and possessed the cocaine in Maine during the November 15

trip. The defendant testified, however, that during their

first trip to Massachusetts he handed the package of cocaine

to Porcaro while they were still in Lawrence and Porcaro put

the package under his seat. The defendant testified that

during the second trip he handed the package of cocaine to

Porcaro before they left Lawrence, and Porcaro put it into

the glove compartment. The defendant contends that he did

not possess or distribute the cocaine in Maine on either

trip. He argues that if the jury believed him, there was no

proper basis for venue in Maine because the crimes occurred

in Massachusetts.

 -12-
 12

 The defendant relies on three cases involving

possession with intent to distribute drugs in which the

courts found that venue was improper because the defendants

were prosecuted in districts in which they had neither actual

nor constructive possession of the contraband. In United
 

States v. Delgado, 914 F.2d 1062, 1064-65 (8th Cir. 1990),
 

the court found that venue was improper in North Dakota for

prosecution of the defendant for possession with intent to

distribute cocaine because neither the defendant nor the

cocaine ever entered North Dakota. In United States v.
 

Medina-Ramos, 834 F.2d 874, 877 (10th Cir. 1987), the court
 

found that venue was improper in New Mexico where the cocaine

travelled without the defendants who were removed from the

train in California because "the locus of the constructive

possession, the locus of a crime committed by constructive

possession, cannot be a place where the defendant has never

been, personally or by a person whose acts are attributable

to him." Id. In United States v. Davis, 666 F.2d at 200, the
 

court found that venue, for a substantive possession charge,

was improper in Georgia because the defendants never actually

or constructively possessed the drugs while they were in

Georgia. None of these cases are apposite. 

 The defendant's reasoning ignores his close

connection with the cocaine during both trips back to Maine,

even according to his own version of events. The defendant

 -13-
 13

rode back to Maine with the cocaine in the car, in

circumstances which show that he had either actual or joint

constructive possession of the cocaine in Maine. Illegal

possession of drugs "can be actual or constructive, sole or

joint." United States v. Wight, 968 F.2d 1393, 1397 (1st
 

Cir. 1992); United States v. Vargas, 945 F.2d 426, 428 (1st
 

Cir. 1991). Although mere association with someone who

possesses drugs is insufficient to show possession,

constructive possession exists if the defendant knows the

drugs are available and has the power and intent to exercise

dominion and control over them. United States v. Garcia, No.
 

92-1427, slip op. at 6-7 (Feb. 4, 1993, 1st Cir.) (finding

joint constructive possession of a package of cocaine found

in the bedroom closet of two defendants). "The typical

constructive possession case in the criminal law is where the

defendant and the object are in the same jurisdiction, but

the defendant does not have the object in hand and indeed may

try to disclaim ownership or possession." Medina-Ramos, 834
 

F.2d at 876. Joint possession occurs when both the defendant

and another person share power and intent to exercise

dominion and control over contraband. Wight, 968 F.2d at
 

1398 (finding joint constructive possession of a weapon where

defendant was a passenger in the van, was in charge of the

drug transaction, and the weapon was accessible to defendant

in the van); United States v. Batista-Polanco, 927 F.2d 14,
 

 -14-
 14

18-19 (1st Cir. 1991) (finding joint constructive possession

of heroin by defendant sitting at a table with others where

heroin was being packaged). Constructive possession may be

proven by direct or circumstantial evidence. United States
 

v. Martinez, 922 F.2d 914, 923-24 (1st Cir. 1991).
 

 The district court instructed the jury on

constructive and joint possession, without objection.3

During their deliberations, the jury requested a copy of the

indictment and a written clarification of the instructions on

possession, distribution, and intent to distribute. After

 

3 The law recognizes also different
 kinds of possession. A person may have
 actual possession or constructive
 possession. And possession may be sole
 or possession may be joint. Neither
 proof of physical proximity to the
 cocaine, nor the mere association with
 someone who does control it is alone
 enough to establish actual or
 constructive possession.
 A person who has direct physical
 control of something on or around his
 person is then in actual possession of
 it. A person who is not in actual
 possession, but who has both the power
 and the intention to take control over
 something later is in constructive
 possession of it.
 If one person alone has actual or
 constructive possession, possession is
 sole, sole possession.
 If two or more persons share actual or
 constructive possession, possession is
 joint. Joint possession.
 Whenever I have used the word
 possession in these instructions, I mean
 actual as well as constructive, and joint
 as well as sole possession.
Record at 463.

 -15-
 15

discussion with counsel, the trial judge sent the jury copies

of the indictment and of the instructions, which he had

previously read to them, on possession, distribution and

intent to distribute and joint and constructive possession.

The jury was thoroughly instructed that possession includes

joint and constructive possession in addition to actual

possession. The defendant does not dispute that he bought

the cocaine for Porcaro and always intended to give it to

him. Intent to distribute, therefore, is not disputed. The

defendant argues that distribution of the cocaine to Porcaro

in Massachusetts ended the crimes there. We disagree. The

crimes continued into Maine because the cocaine remained

accessible to the defendant who had purchased it, who knew

where it was, and who could have retrieved it at any time.

The defendant remained in constructive joint possession of

the cocaine during the trip back to Maine based on his own

testimony. Accepting the defendant's version of events,

constructive possession ended and distribution occurred, on

the first trip, when Porcaro dropped him off in Maine and he

left the cocaine in the car with Porcaro. The defendant was

not charged with distribution on the second trip. Therefore,

even based on the defendant's version of events for both

trips, the defendant's continued joint constructive

possession of the cocaine with Porcaro and his distribution

 -16-
 16

to Porcaro in Maine, on the first trip, was sufficient to

establish venue in Maine. 

 When proof of venue is so clear that no reasonable

juror could have found otherwise, an erroneous jury

instruction on venue is not plain error. See, e.g., United
 

States v. Martinez, 901 F.2d 374, 376 (4th Cir. 1990)
 

(holding that failure to instruct on venue was not reversible

error where clear proof of venue existed); see also United
 

States v. Moeckly, 769 F.2d 453, 461 (8th Cir. 1985), cert.
 

denied, 476 U.S. 1104 (1986). Although the district court's
 

instructions on venue included an overly broad description of

conduct relevant for determining venue, the error did not

result in a violation of the defendant's constitutional right

to venue in the district where the crimes were committed. If

the jury believed Porcaro's testimony, the government proved

actual possession and distribution of the cocaine in Maine.

Even if the jury believed the defendant's testimony, that he

delivered the cocaine to Porcaro in Massachusetts, the

evidence at trial established constructive and/or joint

possession of the cocaine in Maine. Based on either version

of events, the jury had sufficient grounds to find proper

venue. We hold that the erroneous instructions did not

result in a miscarriage of justice in this case, and

therefore, did not constitute plain error.

 -17-
 17

B. Ineffective Assistance of Counsel
 

 The defendant appeals his conviction on the

additional ground that he lacked effective assistance of

counsel due to his trial counsel's failure to pursue an

entrapment defense. The defendant argues that the facts and

circumstances of the case support an entrapment defense.

During cross-examination of the defendant, the prosecutor

asked whether defense counsel was relying on an entrapment

defense. Defense counsel, when pressed, responded that he

would have to consult with the defendant before he could be

sure. The court then proceeded on the assumption that

entrapment would not be used as a defense unless defense

counsel notified the court otherwise. Defense counsel

apparently did not raise the entrapment defense again. The

issue of ineffective assistance of counsel was not raised

before the trial court. 

 The general rule is that we will not hear a claim

of ineffective assistance of counsel raised for the first

time on direct appeal. United States v. Roccio, 981 F.2d
 

587, 590 (1st Cir. 1992); United States v. McGill, 952 F.2d
 

16, 19 (1st Cir. 1991); United States v. Austin, 948 F.2d
 

783, 785 (1st Cir. 1991) ("In the vast majority of

ineffective assistance of counsel claims sought to be brought

on direct appeal after completion of a trial on the merits,

no record exists for the appellate court to examine in

 -18-
 18

assessing the validity of the claim."). A claim of

ineffective assistance of counsel which involves matters not

fully developed in the trial record, but necessary for

determination of the claim, is not ripe for decision on

direct appeal. United States v. Sutherland, 929 F.2d 765,
 

774 (1st Cir.), cert. denied sub nom., Fini v. United States,
 

112 S. Ct. 83 (1991); cf. United States v. Natanel, 938 F.2d
 

302, 309 (1st Cir. 1991) (finding an exception to the rule

"where the critical facts [were] not genuinely in dispute and

the record [was] sufficiently developed to allow reasoned

consideration of the ineffective assistance of counsel

claim"), cert denied, 112 S. Ct. 986 (1992). A fact-specific
 

claim of ineffective assistance of counsel is not appropriate

for review on direct appeal. United States v. Hunnewell, 891
 

F.2d 955, 956 (1st Cir. 1989). Moreover, the trial judge has

a better perspective "to appraise defense counsel's

representation in the district court proceedings." United
 

States v. Sanchez, 917 F.2d 607, 612-13 (1st Cir. 1990), cert
 

denied, 111 S. Ct. 1625 (1991).
 

 The Sixth Amendment right to counsel in a criminal

prosecution includes the right to reasonably effective

assistance of counsel. Strickland v. Washington, 466 U.S.
 

668, 686-87 (1984). To prevail on a claim of ineffective

assistance of counsel, "a criminal defendant must show both

that counsel fell short of the applicable performance

 -19-
 19

standard and that prejudice resulted." Natanel, 938 F.2d at
 

309. When applying the performance test, we examine what

counsel "knew, or should have known, at the time his tactical

choices were made and implemented." Id. To prove the second
 

part of the test, a defendant "must show not only that

counsel was deficient but also that 'counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial

whose result is reliable.'" Sutherland, 929 F.2d at 774
 

(quoting Strickland, 466 U.S. at 687). 
 

 Defense counsel's failure to pursue the entrapment

defense is not sufficiently developed in the trial record for

us to evaluate effectiveness of representation. We cannot

determine from the record, for example, whether counsel made

a tactical decision not to pursue entrapment, and to focus

the defense on the venue issue instead. See, e.g., United
 

States v. Tabares, 951 F.2d 405, 409 (1st Cir. 1991).
 

Because the entrapment defense was not fully developed, and

the government indicated that it would present additional

evidence to counter the defense, we also cannot determine the

likelihood of prejudice resulting from failure to use the

defense of entrapment. Defendant's brief on appeal

acknowledges that factual development of the claim of

ineffective assistance of counsel might be necessary. We

agree, and decline to decide this issue leaving it to be

 -20-
 20

addressed, if defendant chooses, through collateral attack

pursuant to 28 U.S.C. 2255. 

 Affirmed.
 

 Dubitante follows.
 

 -21-
 21

 SELYA, Circuit Judge (dubitante). Although concurring
 SELYA, Circuit Judge (dubitante).
 

in the court's judgment, I write separately because I have

serious reservations as to whether the district judge's

charge on the issue of venue, taken as a whole, constituted

error at all. Be that as it may, the court, after finding

what it thinks is error, concludes that the perceived error

was neither plain nor prejudicial, see ante at 16-17, and
 

decides that the defendant's conviction should stand. See
 

ante at 20. Given that unexceptionable outcome, further
 

pursuit of my point would be a purely academic exercise

which, on balance, is probably best foregone. After all, as

the Roman maxim has it, si finis bonus est, totum bonum exit.
 

 -22-
 22