USCA1 Opinion

 

 March 30, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1890 UNITED STATES, Appellee, v. PETER N. GEORGACARAKOS, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Seth M. Kalberg, Jr. for appellant. ____________________ Margaret D. McGaughey, Assistant United States Attorney, _______________________ with whom Richard S. Cohen, United States Attorney and Jonathan _________________ ________ Chapman, Assistant United States Attorney were on brief, for _______ appellee. ____________________ March 30, 1993 ____________________ BOWNES, Senior Circuit Judge. The defendant, Peter BOWNES, Senior Circuit Judge ____________________ N. Georgacarakos, appeals his conviction of possession with intent to distribute and distribution of cocaine on the grounds that the district court's jury instructions on venue were erroneous, and that his defense was flawed by the ineffective assistance of counsel. We decline to consider the defendant's ineffective assistance claim which was not raised before the district court. The jury instructions on venue, to which defendant-appellant now objects, were not objected to after the charge as required by Fed. R. Crim. P. 30. We find that the instructions did not constitute plain error and affirm the conviction. I. I. BACKGROUND BACKGROUND __________ During October, 1991, Frank "Tony" Porcaro agreed to cooperate with the Drug Enforcement Administration ("DEA") office and the South Portland Police Department in Maine on supervised undercover drug purchases from drug dealers. In his role as an undercover informant, Porcaro contacted the defendant, whom he had known for several months, and asked the defendant to help him purchase cocaine. Porcaro told the defendant that he owed money to dangerous people, that he had resorted to desperate methods to get money for repayment, and that he had to get cocaine in order to pay them back. After -2- 2 several calls from Porcaro, the defendant agreed to help him buy cocaine. The DEA and South Portland police instructed and supervised Porcaro in the undercover operation, and provided Porcaro with all necessary equipment including substantial amounts of money for the cocaine purchases and a "body wire" recording device to record his conversations with the defendant. The defendant and Porcaro made two trips to Lawrence, Massachusetts, one on October 25 and the other on November 15, 1991, to purchase cocaine. On both days, the defendant called his source in Lawrence before he and Porcaro began their journey. Porcaro drove borrowed cars on both trips and the defendant was the only passenger. The defendant admits that he purchased cocaine with Porcaro's money and then gave the cocaine to him. He testified at trial and argues on appeal that he purchased and gave the cocaine to Porcaro in Massachusetts. Porcaro testified to the contrary that on both occasions the defendant kept the cocaine until they reached their destinations in Maine. Porcaro testified that on October 25, the defendant kept the cocaine in his pants until they reached Scarborough where he handed Porcaro the cocaine wrapped in a napkin. As to the November 15 trip, Porcaro testified that the defendant again kept the cocaine during the trip back to Maine and that he never saw the cocaine. Porcaro testified that he drove to a -3- 3 prearranged meeting place, a motel parking lot in South Portland. In the parking lot, Porcaro got out of the car, and police and DEA agents surrounded the car. Two of the agents testified that they saw the defendant moving and leaning forward toward the dashboard before he put his hands up as ordered. The agents found a package of cocaine in the glove compartment of the car after the defendant was arrested. Venue was the primary focus of the defense. Defense counsel objected to the district court's proposed jury instructions on venue before counsels' closing arguments to the jury and before the court gave the charge to the jury. When the court gave counsel an opportunity to object to the instructions after the charge and before the jury retired, defense counsel raised other issues, but did not object again to the instructions on venue. The jury found that venue was proper in Maine, and found the defendant guilty on both counts. This appeal followed. II. II. ANALYSIS ANALYSIS ________ The defendant raises two issues on appeal: (1) error in the district court's jury instructions on venue, and (2) ineffective assistance of counsel due to trial counsel's failure to pursue the defense of entrapment. -4- 4 A. Jury Instructions on Venue A. Jury Instructions on Venue __________________________ During the charge to the jury, the district court gave instructions on venue which the defendant claims are contrary to the law because they allowed the jury to take an impermissibly broad view of conduct relevant to proving venue. Proper venue in a criminal prosecution is a constitutional right: the Framers wrote into the Constitution that "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed. . ." Article III, 2, cl. 3. As though to underscore the importance of this safeguard, it was reinforced by the provision of the Bill of Rights requiring trial "by an impartial jury of the State and district wherein the crime shall have been committed." Sixth Amendment. United States v. Johnson, 323 U.S. 273, 275 (1944); see also ______________ _______ ___ ____ Fed. R. Crim. P. 18. If the federal statute defining the crime charged does not indicate a method for determining the location of the crime for venue, the location "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." United States _____________ v. Anderson, 328 U.S. 699, 703 (1946). Because venue is not ________ an element of the offense, the government bears the burden of proving venue by a preponderance of the evidence rather than by the higher standard, beyond a reasonable doubt. United ______ States v. Hall, 691 F.2d 48, 50 (1st Cir. 1982). ______ ____ -5- 5 The defendant in this case was charged in two counts with violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(C): Count One charged possession with intent to distribute and distribution of cocaine on October 25, 1991, and Count Two charged possession with intent to distribute on November 15, 1991. The statute does not indicate a method for determining venue. Continuing crimes, i.e., crimes committed in more than one district, are governed by 18 U.S.C. 3237(a).1 Distribution and possession with intent to distribute drugs are continuing crimes. United States v. _____________ Uribe, 890 F.2d 554, 558-59 (1st Cir. 1989); United States v. _____ _____________ Kiser, 948 F.2d 418, 425 (8th Cir. 1991), cert. denied, 112 _____ _____ ______ S. Ct. 1666 (1992). Therefore, venue for the crimes prosecuted in this case was proper in any district where the crimes began, continued or were completed. In order to decide where the crimes occurred, we must determine what acts by the defendant constituted the crimes charged. Johnston v. United States, 351 U.S. 215, ________ _____________ 220-21 (1956). To determine venue, we examine "the key verbs ____________________ 1 18 U.S.C. 3237(a) provides in pertinent part: (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. -6- 6 in the statute defining the criminal offense" to find the scope of relevant conduct. United States v. Tedesco, 635 _____________ _______ F.2d 902, 905 (1st Cir. 1980), cert. denied, 452 U.S. 962 _____ ______ (1981); see also United States v. Griffin, 814 F.2d 806, 810 ___ ____ _____________ _______ (1st Cir. 1987). The key verbs relevant to the crimes charged in this case are "distribute" and "possess with intent to distribute." Actions which are merely preparatory or prior to the crime are not probative in determining venue. United States v. Beech-nut Nutrition Corp., 871 F.2d 1181, _____________ __________________________ 1190 (2d Cir.), cert. denied sub nom., Lavery v. United _____ ___________ ____ ______ ______ States, 493 U.S. 933 (1989). Therefore, only actions by the ______ defendant which constitute either distributing or possessing with intent to distribute cocaine are probative in determining venue for those offenses. Griffin, 814 F.2d at _______ 810; United States v. Davis, 666 F.2d 195, 200 (5th Cir. Unit _____________ _____ B 1982). Jury instructions on venue must restrict the jury's focus to the defendant's conduct which constituted the crimes charged. The jury instructions which the defendant challenges were as follows: Now both counts charge that the crimes occurred in the district of Maine and elsewhere. It is sufficient if the government proves by a preponderance of the evidence, in other words, that it is more likely than not, that any act in ___________ furtherance of the crimes charged _________________________________________ occurred in Maine. Offenses beginning in _________________ one district and completed in another or -7- 7 committed in more than one district may be prosecuted in either such district. . . . Let me summarize this for you. If you are convinced beyond a reasonable doubt that the defendant distributed cocaine and possessed cocaine with the intent to distribute it, on a date reasonably near October 25, 1991, and you are convinced that it is more likely than not that the defendant did any act in Maine in _________________________________________ furtherance of this crime, then you must _________________________ convict him on Count One. Otherwise, you must acquit him on Count One. If [you] are convinced beyond a reasonable doubt that the defendant possessed cocaine with the intent to distribute it on a date reasonably near November 15, 1991, and you are convinced that it is more likely than not that the defendant did any act in Maine in _________________________________________ furtherance of this crime, then you must __________________________ convict him on Count Two. Otherwise, you must acquit him on Count Two. Record at 461, 464 (emphasis added). The emphasized language, which is challenged by the defendant, appropriately describes venue for a conspiracy charge or for aiding and abetting others in commission of a crime. Uribe, 890 F.2d at _____ 558; see also United States v. Lam Kwong-Wah, 924 F.2d 298, ___ ____ ______________ _____________ 301 (D.C. Cir. 1991) ("It is a well-established rule that 'a conspiracy prosecution may be brought in any district in which some overt act in furtherance of the conspiracy was committed by any of the co-conspirators,'" (citation omitted)); United States v. Long, 866 F.2d 402, 407 (11th _____________ ____ Cir. 1989) (discussing similarity of proof necessary to establish venue for conspiracy and aiding and abetting). Group crimes, such as conspiracy and aiding and abetting, may -8- 8 have a broad scope of conduct relevant to venue due to multiple participants and the participatory nature of the crimes. In individual crimes, such as distribution and possession with the intent to distribute cocaine, "actions in furtherance of the crime" could be interpreted by a jury to include conduct other than possessing and distributing cocaine which is merely preparatory or prior to the crimes. We agree with the defendant, therefore, that the district court's instructions on venue were overly broad and were erroneous. Because the defendant failed to object to the instructions on venue after the charge to the jury as required by Fed. R. Crim. P. 30, we review the instructions under the plain error standard.2 United States v. Arias- _____________ ______ Santana, 964 F.2d 1262, 1268 (1st Cir. 1992); United States _______ _____________ v. Mendoza-Acevedo, 950 F.2d 1, 4-5 (1st Cir. 1991). "Plain _______________ errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the ____________________ 2 Fed. R. Crim. P. 30 provides in pertinent part: No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury. -9- 9 court." Fed. R. Crim. P. 52(b). To cause reversal of conviction, plain error must be so egregious as to "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." United States v. Young, 470 U.S. 1, _____________ _____ 16 (1985). When reviewing jury instructions for plain error, we examine the instructions in the context of the entire charge, and as part of the record of the trial, to determine whether they undermined the fundamental fairness of the trial. Id. at 15-16; United States v. Park, 421 U.S. 658, ___ _____________ ____ 674 (1974) (challenged jury instructions are to be "viewed as a whole and in the context of the trial"); United States v. _____________ Weston, 960 F.2d 212, 216 (1st Cir. 1992) ("In assessing ______ claims of plain error, we consider the instructions as a whole, taking into account whether the putative errors so skewed the entire trial that the defendant's conviction offends due process."). The question is whether the erroneous instructions allowed the jury to find venue in Maine in violation of the defendant's constitutional right to venue in the district where the crimes were committed. The defendant urges us to reverse his conviction based upon the rule "'that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside.'" United States v. Rodriguez, 465 F.2d 5, 10 (2d Cir. 1972) _____________ _________ (quoting Leary v. United States, 395 U.S. 6, 31-32 (1969)) _____ _____________ -10- 10 (footnotes omitted). In Leary, id., the defendant challenged _____ ___ the constitutionality of a statutory presumption which was the basis for one of two alternative theories of guilt presented to the jury. The Supreme Court held that the statutory presumption was unconstitutional and reversed the conviction. In Rodriguez, 465 F.2d 5, the issue of venue of _________ the crime of uttering a forged check was submitted to the jury on two alternative theories of guilt: aiding and abetting the crime or that the crime of uttering a forged check was a "continuing offense" pursuant to 18 U.S.C. 3237. The court held that because the crime of uttering a forged check was not a continuing offense, one of the theories was incorrect, and reversed the conviction based on the Leary rule. _____ In this case, the jury instructions did not present two alternative theories of guilt. Rather, the instructions impermissibly broadened the scope of conduct which the jury might have considered in determining venue. The Leary rule, _____ therefore, is inapposite to this case. An analogous rule, which is more closely related to this case, provides "that a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." Zant v. Stephens, 462 U.S. 862, 881 (1983). An exception to ____ ________ -11- 11 the rule exists if uncertainty as to the grounds for the jury's verdict can be eliminated. United States v. Ochs, 842 _____________ ____ F.2d 515, 520 (1st Cir. 1988). Based on a review of the trial record, there can be no uncertainty that the jury's verdict on venue was based on sufficient grounds. There were two versions of events of the trips presented to the jury through testimony at trial. Porcaro, the informant, testified that during both trips to Massachusetts, the defendant kept the package of cocaine with him until they arrived back in Maine. Based on Porcaro's testimony, there is no question that the jury could sustainably have found that the defendant possessed and distributed the cocaine in Maine during the October 25 trip, and possessed the cocaine in Maine during the November 15 trip. The defendant testified, however, that during their first trip to Massachusetts he handed the package of cocaine to Porcaro while they were still in Lawrence and Porcaro put the package under his seat. The defendant testified that during the second trip he handed the package of cocaine to Porcaro before they left Lawrence, and Porcaro put it into the glove compartment. The defendant contends that he did not possess or distribute the cocaine in Maine on either trip. He argues that if the jury believed him, there was no proper basis for venue in Maine because the crimes occurred in Massachusetts. -12- 12 The defendant relies on three cases involving possession with intent to distribute drugs in which the courts found that venue was improper because the defendants were prosecuted in districts in which they had neither actual nor constructive possession of the contraband. In United ______ States v. Delgado, 914 F.2d 1062, 1064-65 (8th Cir. 1990), ______ _______ the court found that venue was improper in North Dakota for prosecution of the defendant for possession with intent to distribute cocaine because neither the defendant nor the cocaine ever entered North Dakota. In United States v. ______________ Medina-Ramos, 834 F.2d 874, 877 (10th Cir. 1987), the court ____________ found that venue was improper in New Mexico where the cocaine travelled without the defendants who were removed from the train in California because "the locus of the constructive possession, the locus of a crime committed by constructive possession, cannot be a place where the defendant has never been, personally or by a person whose acts are attributable to him." Id. In United States v. Davis, 666 F.2d at 200, the ___ _____________ _____ court found that venue, for a substantive possession charge, was improper in Georgia because the defendants never actually or constructively possessed the drugs while they were in Georgia. None of these cases are apposite. The defendant's reasoning ignores his close connection with the cocaine during both trips back to Maine, even according to his own version of events. The defendant -13- 13 rode back to Maine with the cocaine in the car, in circumstances which show that he had either actual or joint constructive possession of the cocaine in Maine. Illegal possession of drugs "can be actual or constructive, sole or joint." United States v. Wight, 968 F.2d 1393, 1397 (1st ______________ _____ Cir. 1992); United States v. Vargas, 945 F.2d 426, 428 (1st _____________ ______ Cir. 1991). Although mere association with someone who possesses drugs is insufficient to show possession, constructive possession exists if the defendant knows the drugs are available and has the power and intent to exercise dominion and control over them. United States v. Garcia, No. _____________ ______ 92-1427, slip op. at 6-7 (Feb. 4, 1993, 1st Cir.) (finding joint constructive possession of a package of cocaine found in the bedroom closet of two defendants). "The typical constructive possession case in the criminal law is where the defendant and the object are in the same jurisdiction, but the defendant does not have the object in hand and indeed may try to disclaim ownership or possession." Medina-Ramos, 834 ____________ F.2d at 876. Joint possession occurs when both the defendant and another person share power and intent to exercise dominion and control over contraband. Wight, 968 F.2d at _____ 1398 (finding joint constructive possession of a weapon where defendant was a passenger in the van, was in charge of the drug transaction, and the weapon was accessible to defendant in the van); United States v. Batista-Polanco, 927 F.2d 14, _____________ _______________ -14- 14 18-19 (1st Cir. 1991) (finding joint constructive possession of heroin by defendant sitting at a table with others where heroin was being packaged). Constructive possession may be proven by direct or circumstantial evidence. United States _____________ v. Martinez, 922 F.2d 914, 923-24 (1st Cir. 1991). ________ The district court instructed the jury on constructive and joint possession, without objection.3 During their deliberations, the jury requested a copy of the indictment and a written clarification of the instructions on possession, distribution, and intent to distribute. After ____________________ 3 The law recognizes also different kinds of possession. A person may have actual possession or constructive possession. And possession may be sole or possession may be joint. Neither proof of physical proximity to the cocaine, nor the mere association with someone who does control it is alone enough to establish actual or constructive possession. A person who has direct physical control of something on or around his person is then in actual possession of it. A person who is not in actual possession, but who has both the power and the intention to take control over something later is in constructive possession of it. If one person alone has actual or constructive possession, possession is sole, sole possession. If two or more persons share actual or constructive possession, possession is joint. Joint possession. Whenever I have used the word possession in these instructions, I mean actual as well as constructive, and joint as well as sole possession. Record at 463. -15- 15 discussion with counsel, the trial judge sent the jury copies of the indictment and of the instructions, which he had previously read to them, on possession, distribution and intent to distribute and joint and constructive possession. The jury was thoroughly instructed that possession includes joint and constructive possession in addition to actual possession. The defendant does not dispute that he bought the cocaine for Porcaro and always intended to give it to him. Intent to distribute, therefore, is not disputed. The defendant argues that distribution of the cocaine to Porcaro in Massachusetts ended the crimes there. We disagree. The crimes continued into Maine because the cocaine remained accessible to the defendant who had purchased it, who knew where it was, and who could have retrieved it at any time. The defendant remained in constructive joint possession of the cocaine during the trip back to Maine based on his own testimony. Accepting the defendant's version of events, constructive possession ended and distribution occurred, on the first trip, when Porcaro dropped him off in Maine and he left the cocaine in the car with Porcaro. The defendant was not charged with distribution on the second trip. Therefore, even based on the defendant's version of events for both trips, the defendant's continued joint constructive possession of the cocaine with Porcaro and his distribution -16- 16 to Porcaro in Maine, on the first trip, was sufficient to establish venue in Maine. When proof of venue is so clear that no reasonable juror could have found otherwise, an erroneous jury instruction on venue is not plain error. See, e.g., United ___ ____ ______ States v. Martinez, 901 F.2d 374, 376 (4th Cir. 1990) ______ ________ (holding that failure to instruct on venue was not reversible error where clear proof of venue existed); see also United ___ ____ ______ States v. Moeckly, 769 F.2d 453, 461 (8th Cir. 1985), cert. ______ _______ _____ denied, 476 U.S. 1104 (1986). Although the district court's ______ instructions on venue included an overly broad description of conduct relevant for determining venue, the error did not result in a violation of the defendant's constitutional right to venue in the district where the crimes were committed. If the jury believed Porcaro's testimony, the government proved actual possession and distribution of the cocaine in Maine. Even if the jury believed the defendant's testimony, that he delivered the cocaine to Porcaro in Massachusetts, the evidence at trial established constructive and/or joint possession of the cocaine in Maine. Based on either version of events, the jury had sufficient grounds to find proper venue. We hold that the erroneous instructions did not result in a miscarriage of justice in this case, and therefore, did not constitute plain error. -17- 17 B. Ineffective Assistance of Counsel B. Ineffective Assistance of Counsel _________________________________ The defendant appeals his conviction on the additional ground that he lacked effective assistance of counsel due to his trial counsel's failure to pursue an entrapment defense. The defendant argues that the facts and circumstances of the case support an entrapment defense. During cross-examination of the defendant, the prosecutor asked whether defense counsel was relying on an entrapment defense. Defense counsel, when pressed, responded that he would have to consult with the defendant before he could be sure. The court then proceeded on the assumption that entrapment would not be used as a defense unless defense counsel notified the court otherwise. Defense counsel apparently did not raise the entrapment defense again. The issue of ineffective assistance of counsel was not raised before the trial court. The general rule is that we will not hear a claim of ineffective assistance of counsel raised for the first time on direct appeal. United States v. Roccio, 981 F.2d _____________ ______ 587, 590 (1st Cir. 1992); United States v. McGill, 952 F.2d _____________ ______ 16, 19 (1st Cir. 1991); United States v. Austin, 948 F.2d _____________ ______ 783, 785 (1st Cir. 1991) ("In the vast majority of ineffective assistance of counsel claims sought to be brought on direct appeal after completion of a trial on the merits, no record exists for the appellate court to examine in -18- 18 assessing the validity of the claim."). A claim of ineffective assistance of counsel which involves matters not fully developed in the trial record, but necessary for determination of the claim, is not ripe for decision on direct appeal. United States v. Sutherland, 929 F.2d 765, _____________ __________ 774 (1st Cir.), cert. denied sub nom., Fini v. United States, _____ ______ ___ ____ ____ _____________ 112 S. Ct. 83 (1991); cf. United States v. Natanel, 938 F.2d ___ _____________ _______ 302, 309 (1st Cir. 1991) (finding an exception to the rule "where the critical facts [were] not genuinely in dispute and the record [was] sufficiently developed to allow reasoned consideration of the ineffective assistance of counsel claim"), cert denied, 112 S. Ct. 986 (1992). A fact-specific ____ ______ claim of ineffective assistance of counsel is not appropriate for review on direct appeal. United States v. Hunnewell, 891 _____________ _________ F.2d 955, 956 (1st Cir. 1989). Moreover, the trial judge has a better perspective "to appraise defense counsel's representation in the district court proceedings." United ______ States v. Sanchez, 917 F.2d 607, 612-13 (1st Cir. 1990), cert ______ _______ ____ denied, 111 S. Ct. 1625 (1991). ______ The Sixth Amendment right to counsel in a criminal prosecution includes the right to reasonably effective assistance of counsel. Strickland v. Washington, 466 U.S. __________ __________ 668, 686-87 (1984). To prevail on a claim of ineffective assistance of counsel, "a criminal defendant must show both that counsel fell short of the applicable performance -19- 19 standard and that prejudice resulted." Natanel, 938 F.2d at _______ 309. When applying the performance test, we examine what counsel "knew, or should have known, at the time his tactical choices were made and implemented." Id. To prove the second ___ part of the test, a defendant "must show not only that counsel was deficient but also that 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Sutherland, 929 F.2d at 774 __________ (quoting Strickland, 466 U.S. at 687). __________ Defense counsel's failure to pursue the entrapment defense is not sufficiently developed in the trial record for us to evaluate effectiveness of representation. We cannot determine from the record, for example, whether counsel made a tactical decision not to pursue entrapment, and to focus the defense on the venue issue instead. See, e.g., United ___ ____ ______ States v. Tabares, 951 F.2d 405, 409 (1st Cir. 1991). ______ _______ Because the entrapment defense was not fully developed, and the government indicated that it would present additional evidence to counter the defense, we also cannot determine the likelihood of prejudice resulting from failure to use the defense of entrapment. Defendant's brief on appeal acknowledges that factual development of the claim of ineffective assistance of counsel might be necessary. We agree, and decline to decide this issue leaving it to be -20- 20 addressed, if defendant chooses, through collateral attack pursuant to 28 U.S.C. 2255. Affirmed. Affirmed. _________ Dubitante follows. Dubitante follows. _________ -21- 21 SELYA, Circuit Judge (dubitante). Although concurring SELYA, Circuit Judge (dubitante). _____________ in the court's judgment, I write separately because I have serious reservations as to whether the district judge's charge on the issue of venue, taken as a whole, constituted error at all. Be that as it may, the court, after finding what it thinks is error, concludes that the perceived error was neither plain nor prejudicial, see ante at 16-17, and ___ ____ decides that the defendant's conviction should stand. See ___ ante at 20. Given that unexceptionable outcome, further ____ pursuit of my point would be a purely academic exercise which, on balance, is probably best foregone. After all, as the Roman maxim has it, si finis bonus est, totum bonum exit. ____________________________________ -22- 22